Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning to everyone who's joining us today. I'm pleased to be sitting here this week and I have enjoyed this week sitting with my colleagues, Judges Britt Grant and Gerald Joflat. Mr. Brian today and I'm very hopeful and I know all the members of my court are hopeful that this is one of the final Zoom sessions and that we will soon be returning in person. But on Zoom, we operate on the traffic light system and for those of you who have not done this before, your time remaining will first appear in green. When you get down to two minutes, it will appear in yellow and it will turn red when you have reached the end of your allotted time. And at that point, if you would please just wrap up that thought with a sentence or two, otherwise I'm going to stop you. All right, we have three cases on our oral argument calendar today and I will now call the first case. United States of America v. Mario Montenegro. We have Allison Guagliardo for the to proceed. Yes, your honor. Thank you. May it please support counsel. The government agreed below that the old 22 caliber bolt action rifle found in Mr. Montenegro's trailer was for hunting and had no connection to the offense. There are two grounds for reversing the district court's decision to apply the firearms enhancement. First, the government failed to meet its initial initial burden to establish the enhancement. And second, even if the government had met its initial burden, the defense then met its burden to establish. It is clearly improbable that this old hunting rifle was connected to the offense. What distinguishes this case is that the government, citing the clearly improbable standard applicable to the defense, stipulated that this was an old bolt action rifle that was for hunting. And then it's sentencing. The government went further and detailed that this old bolt action rifle was not connected to the offense. The district counsel, let me let me interrupt you. A lot has been made. There are a old bolt action hunting rifle. There's nothing that indicates that this rifle was inoperable, correct? That is correct, your honor. And it's and it's pretty accepted that while someone may use a gun for hunting or for one situation, that doesn't mean it can't be used in another situation, correct? That would be correct. But if I could address the specific facts in the different is and on the record, this this gun is described as a 22 caliber and it is a bolt action and it is telling your honor that the government in its written stipulation and I'm referring to page 20 of the PSR, the government submitted its own written objection and in that objection specified that this was an old bolt action rifle. And and this investigation included involvement by the Drug Enforcement Administration. This was a search warrant that they obtained. And if any agency would understand if a gun is connected with a drug offense, it would be the DEA and the government looking at all the facts it had before it, including the fact and I think this is very significant that the there was the sale of the two kilograms, nearly two kilograms of cocaine at a store. This old hunting rifle was left behind in the trailer and it was then found in the search of the trailer. But there was a drug deal that that happened in the trailer, correct? There was a month prior, your honor, and I have two points to that is is there's nothing in the record about whether the firearm that hunting rifle was present at the trailer at the time to an undercover. And at sentencing, the government explained to the district court with no equivocation that no witness, including its undercover, had ever seen Mr. Montenegro with this old hunting rifle. And just to describe what the bolt action means is, as I understand it, with the bolt action, each bullet, you have to use the bolt to put each reason I point this out, your honor, is this is an investigation, again, involving the Drug Enforcement Administration, the DEA, who had obtained the search warrant that's in PSR paragraph 11. And the government specified in its written objection that this was an old bolt action rifle. So clearly, there's something about this case that's specific, why the government stipulated and admitted without any equivocations and left it undisputed that this was a hunting rifle that had no connection to the offense before the district court. And so that's what distinguishes Mr. Montenegro's case from the other cases that have been before this court. And what that has left then, and we certainly have addressed this in the briefs, is that has left the district court completely speculating as to this firearm, this old hunting rifles connection to the offense. And, and we have detailed that in the brief, but in the brief, but certainly, and I know this, the court had asked about the November sale, it's a month before its appearance. And again, I think it's very significant that the most significant sale here is the two kilograms of cocaine at a store. And that will that old hunting rifle is left behind. And the guidelines do not automatically always apply anytime a defendant has a firearm. It's a backwards looking inquiry. Was there a connection? Was the and I'll use the exact language? Is it clearly improbable that the weapon was connected to the offense? And here, there's just no, no qualification to the government's factual admissions before the district court that this was a purely hunting rifle that had no connection to the offense. Well, sorry, go ahead, Judge Graham. A lot of the cases talk about the government's burden in demonstrating the facts necessary for this enhancement. Do you think that there are you suggesting there's a rule that if the government doesn't seek it doesn't seek the enhancement, it can't be applied? Or are you just saying that the facts here don't reach the standard that's necessary? It's the facts here do not mean it's necessary, Your Honor, as to either the initial burden, but even if the government had its initial burden, certainly in light of the specific case, the specific facts in Mr. Montenegro's case, the government cited the clearly improbable standard and acknowledged that this firearm was for hunting. So it's specific to this case, Your Honor. Counsel, are you suggesting that under our case law, it is required that the gun be present at the drug deal for the enhancement to apply? Whereas here, the gun was certainly present at where the drugs were stored and where one drug deal had gone down. Is it a problem that it wasn't seen when the drug deal went down at the house? Your Honor, if I could address that for the two different sales. The fact that it's not that it's not taken to the December sale, that most significant sale of two kilograms, I think is indicative of the fact that this is it gives credence and more weight to the fact that the government is agreeing that this is a hunting rifle and purely a hunting rifle that's not connected to the offense. So it's again specific to these the facts of these case, the government's old bolt action rifle and considering all the facts. This is why in this particular case, the fact that the gun is left behind is indicative and gives more weight to the government stipulation. And then as to the November sale, yes, we've agreed that that did occur at the trailer, but it's a month before it's to the undercover. And there's no evidence that Mr. Montenegro had obtained the firearm by that point in time if it was present. And most importantly, again, the government conceded and admitted before the district court. It had no witness saying showing who had said that Mr. Montenegro had had this firearm related to the offense in any way. There's just no equivocation to the government submissions to the district court. Counsel, which offense you think the court focused on and saying that this weapon was connected to it? Which offense? The November 13 offense was unindicted. Is that right? That is correct, your honor. Well, I do want to just be clear. The conspiracy count says from an unknown, I believe, but we don't know when this conspiracy began. No evidence at all, is there? At least in the PSR. I'm trying to throw you a softball. No, I understand. The indictment says at an unknown time. That is correct, your honor. Okay. At an unknown time prior to December 12. That's correct, your honor. How could it happen on December 12? We don't know, do we? Does the plea colloquy or anything tell us exactly when the conspiracy began? I do not believe it does, your honor. Not the plea colloquy nor the indictment. Well, then I don't understand the relevance of the November 13 sale, which was not indicted. And presumably, if the conspiracy was ongoing on November 13, count one would have alleged that conspiracy started on or before November 13 and extended to December 12. And the government joined the defendant in objecting to the application of the guidelines. Yes. Okay. My understanding is, I guess the court on its own initiative overruled the objection by the government and the defendant. Yes, your honor, that's correct. Okay. Counsel, your time has expired, but you have six minutes for rebuttal. Ms. Bondnar, please proceed. Please, the court, Reverend Bondnar for the United States. There is no clear error here because the district court was right and we were wrong. This was a loaded, readily accessible firearm. One wasn't put in the tape in the trailer. Your honor, we don't know. We just know that it was in the trailer while the defendant also possessed 811 grams of cocaine. Oh, I understand that. And you did indict him on the November 13 charge for some strange reason, nor did the indictment allege that it began then. No, no. As far as what I see as for proof is there's absolutely nothing prior to the 12th December. And on the 12th of December, he made a transaction out in public, basically in front of a store or something. Yes. And this rifle was back at the trailer. Yes. And it supposedly had some connection with that offense, that substantive offense. Your honor, he was charged in the second count with possession with intent to distribute cocaine. And that would include the 811 grams that were in the trailer with the firearm, this very small trailer. And the firearm was loaded with one in the chamber and one in the magazine. I understand all that. Okay. I believe to answer. He was charged. The crime occurred on the 12th outside, did it not? That's where the crime occurred. That's where the transaction occurred, your honor. I understand that. I don't believe that the crime itself was only that transaction. It was possession with intent to distribute, which would include the cocaine stored in that trailer on that same day. All right. So this was a loaded, readily accessible firearm. It was a very small trailer. The significance of the previous sale is that he previously had sold cocaine from his residence, this very small trailer. And so the district court was entitled to conclude as it did that he possessed this firearm for at least one purpose of protecting the cocaine there in his trailer, that residence. If it was a hunting firearm, as we accepted below, that doesn't mean that he wasn't also using it to protect the cocaine. And the court under this court's case law was entitled to reject that and conclude that this firearm had the potential to facilitate the offense. And that is exactly what the court found. Based on that, the court was entitled to add the two points for a firearm being present and reject the defendant's proffer that this was clearly improbable that the firearm was related to the offense. This defendant was illegally present in this country. So he was not permitted to possess a firearm. While we accepted below that this was a hunting firearm, that doesn't mean that the defendant wasn't using it to facilitate his offense. And under this court's law, even the potential ability to use the firearm, this loaded firearm stored exactly where this cocaine was in the same small trailer is sufficient to deny him or to overrule his objection that it was clearly improbable. And while the defendant did not raise in his initial brief, the propriety of the court's ruling on the safety valve objection, I would point out to the court that the court's findings are equivalent to that higher standard. This court found unequivocally that the defendant used the firearm to facilitate his drug trafficking offense. Are you under United States versus George? We said the government must show by preponderance of the evidence that a firearm was present at the site of the charge conduct or that the defendant possessed it during conduct associated with the offensive conviction. Yes, you meet that standard here, correct? The undisputed facts absolutely did. Yes, your honor. There's there's no. There's there's no doubt. I mean, everybody accepted that this loaded and readily accessible firearm was in this very small trailer where the 811 grams also was that. What's your response to the contention that because it's somewhat difficult to load this firearm or that it takes a specific effort to load the firearm that that should take it out of that should lead us to conclude that it was clear error. According to the undisputed facts, the firearm was loaded with one in the chamber. And one in the magazine, it was ready to fire. And if this hunting rifle, and it is typically a hunting rifle, a small caliber hunting rifle. If someone came to this steel drug proceeds, they would be significantly deterred by this openly accessible firearm or by the defendant with the firearm in its hand, regardless of whether it's a bolt action that requires a motion in order for it to fire. It's the potential to facilitate the offense that under this court's law justifies the addition of the two points and the denial of safety valve. Your argument basically is that the sale is irrelevant. Your Honor, I understand your argument, you're focusing on what was in the trailer and not the sale. Yes, the sale was irrelevant except that it probably provided a basis for the search warrant. You had to get into the trailer. Yes, I would say that the initial sale at the trailer provided a basis for the search warrant into the trailer. Well, it was a month later, earlier. Yes, Your Honor, it was a month. So between the two of them, yes, they provide the basis to get into the trailer. The second count is possession with intent to distribute and I think it encompasses... I understand that. You're not, he didn't allege the sale. The second count does not allege the sale. No, Your Honor, it does not. It's possession with intent. That's your argument. Yes, and I would also note that this bolt-action rifle, I'm not sure if it would be feasible for a drug dealer to take a bolt-action rifle to a sale at an open store and I'm not sure that that matters. This cocaine and this rifle were in the same small trailer while the defendant lived and the court's finding was that he obtained the firearm to protect his cocaine. That was an entirely reasonable finding. You know, I understand that we objected ourselves to this firearm enhancement below. We were wrong. The district court was right and the defendant has not shown clear error here and that is what the defendant must show in order for this court to reverse. That does make it trickier though. What do you say about all the cases describing the government's burden of making particular showings? Can the court find that the government met its burden as the government's not trying to meet its burden? Well, in this particular case because it was undisputed that the 811 grams was in the small trailer with the loaded and accessible firearm, the burden is met by the factual basis for the charge itself. I think you objected to the guideline because you were focusing on the sale and not the possession in the trailer. Your honor, I don't know why we objected to the guideline. That would be a logical objection. If this indictment had charged a sale in front of that store, then the question would be whether or not the rifle facilitated that sale. I follow that, yes, your honor, and the indictment did not charge the sale, but I would also note that the firearm enhancement would be applicable even in that circumstance based on the relevant much more difficult argument. Yes, your honor, but again, we were wrong. We were just flat wrong. The district court was right and there is no clear error here, no basis for reversal. Unless the court has further questions, I would yield the rest of my time and ask the court to affirm. Thank you, counsel. You have your time on rebuttal. Thank you, your honor, and a few points. I understand that the government has clearly just said it was wrong to have stipulated below, but these are factual admissions that the United States government made looking at the facts. They knew themselves. The DEA is the agency that made the search warrant. They knew themselves what was in the trailer, the type of the firearm. It's an old bolt-action rifle and determined based on its review of the facts that this enhancement should not have applied and it addressed both its initial burden to establish a nexus, the defendant's clearly improbable standard, the defense's burden, and stipulated and factually admitted that this was a firearm for hunting and without any equivocation told the district court that this firearm, this old bolt-action firearm, had no connection to the offense. Those admissions included the fact that they knew that there were the 811 grams of cocaine in the trailer, and I understand obviously the government has reversed its position, but it's provided no basis to do so other than to say it was wrong, but the prosecution looked at all these facts and told the district court this was a purely hunting rifle that had no connection to the offense. Do you think that the 811 grams found in the or were associated with the offense of conviction? Well, your honor, I will tell you in looking at the guilt, so the indictment just says December 12th possession with the intent to distribute. The indictment itself, that could refer to either the sale because both quantities, the sale quantity and the 811 grams at the store, so at the store and at the trailer, both exceed the 500 grams, so it could be that the charged indictment refers to either the possession with the intent of the store or the trailer, and at the guilty plea, the judge mentions you had some, you sold some, you had some back. I forget exactly the wording, but it's potential that both of those are covered at the guilty plea, but in any event, my point is we did not dispute that there were the 811 grams in the trailer, but then knowing that fact, the government stipulated and agreed that this was a rifle for hunting and that it had no, no connection to the offense, and the court asked about George during the government's argument, but that's, that is a, an important distinction between George and this case is whether we're talking about. What do you say about the rule of law which says the court is not bound by the pre-sentence report or the party's objections or anything else? Two of your, two answers. The government could go in, in any case, tell the judge not to enhance the base offense level of a crime on this ground or that ground, the judge disagrees based on the facts, so what do you say about that? I would say that this, these are factual admissions, the undisputed facts, so that does make it different. Oh, I understand they're factual admissions, but the court is operating on a, on the full record. That in light of these admissions and the other facts. Yeah, the government could admit that it was bought for hunting and that begs the question of whether or not it was also used to protect the stash, and I think at the plea hearing, the court told the defendant that it would not be bound by any, any agreement it made with the government, and the government in effect agreed that that guideline not applied, but the court wasn't bound by it and told the defendant when he took the plea. The district court would have needed, would, on these facts though, the district court did not have a reasonable basis to not accept the government's factual admissions. That's what distinguishes this case, and the reason again is the government, knowing all these facts. The government did not say that, the government admitted the fact that it was bought for hunting. But they went farther. That bound the court. It was not only the stipulation that it was for hunting, but then they went further at the sentencing and explained in a four point summation to the district court that the firearm had no connection or relation to the offense. That was a legal question, the legal position the in front of me. That was a legal position, not a factual position. The factual position was that that he bought it for hunting. But I would submit, I'm sorry. And the government can't bind the court on what his intent was with regard to the gun and the stash. That's a matter of intent. What the government may do, and if I can complete this answer because I know I'm running out of time, is every firearm has the potential in an offense. The question though is, is there a connection? Was in the past, was there a connection between the firearm and the drug offense? And at sentencing, the government's not just summarizing the law to Stallings, it is explaining factually that Mr. Montenegro's hunting rifle, this old hunting rifle was not connected to the offense. Here's a, before you run out of time, here's a hypothetical. Let's say that Mr. Montenegro is in his truck with cocaine that he plans to sell in the glove compartment, but he's also wearing his camouflage and has his hunting rifle on the seat next to him. And on his way to a hunting trip, he decides to stop and sell some cocaine. Is the answer different in that factual scenario? I mean, it might be, I mean, obviously if there's a government stipulation that it, looking at all the facts, had admitted that this firearm, either they couldn't establish their initial burden or the government could establish his, that would make that case closer to ours. But for that stipulation, I think, you know, the defendant might have a harder time establishing the clearly improbable standard, but that's simply not true here. When the government's citing that standard, agree that there was a hunting rifle that had no relation to the offense. Thank you, counsel. Your time has expired. Thank you both. We have your case under submission.